In the ESTATE OF Wall
BROADHURST,
Deceased.

Tommy BROADHURST, Personal
Representative, Appellant,

v.

Louella Love BROADHURST,
Claimant-Respondent.

No. 14836.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 1987.

Robert W. Evenson, Pineville, for appellant.

John R. Sims, Ruyle & Sims, Neosho, for respondent.

MAUS, Judge.

In this proceeding the Personal Representative of the Estate of Wall Broadhurst, deceased, contests the widow's election to take against the will under §§ 474.160 to 474.230, and her applications for exempt property, § 474.250, for support, § 474.260 and for a homestead allowance, § 474.290. In the trial court and in this court, that opposition is based upon the contention those rights are barred by a prenuptial agreement. §§ 474.120 and 474.220. The personal representative also asserts as a bar a release agreement signed by the widow after her husband's death. Following a

hearing, the Probate Division of the Circuit Court of McDonald County found the agreements unenforceable, the widow's election to be effective and granted the allowances. The personal representative has appealed.

Only a brief, preliminary statement of facts is necessary. In contemplation of marriage, the decedent Wall Broadhurst and the widow, then Louella Love, on June 21, 1979, executed a prenuptial agreement. In general, that agreement provided "that in the event said marriage is consummated as now planned," neither party would make any claim to the property then owned by the other party. The parties were married on September 1, 1979. They were divorced on August 18, 1981. Approximately two months later they remarried. They did not re-execute the previous prenuptial agreement or execute a new prenuptial agreement.

Wall Broadhurst died on August 2, 1985, survived by his widow and by seven children from a prior marriage. His will had been executed on November 28, 1978. By that will he devised his entire estate to his seven children. That will was admitted to probate on August 7, 1985. On that date, his son, Tommy V. Broadhurst, was appointed personal representative of the estate.

On August 7, 1985, at the request of the personal representative, the attorney for the estate prepared a release agreement between the estate and the widow. In general, that agreement provided the widow would receive from the estate a 1979 pickup, .22 caliber pistol, washer, dryer, stereo, three calves and one sow. In turn, the widow agreed to abide by the terms of the prenuptial agreement previously entered into. She specifically agreed not to make any statutory claim against the estate "whether for widow's allowance, widow's share, statutory share, support for one year, homestead allowance, exempt property, or any other claim, which shall be relinquished in exchange for the delivery of the property itemized above."

Circumstances concerning the property she was to receive from the estate caused the widow to be unwilling to abide by the release agreement. On January 10, 1986, she filed in the Probate Division her election to take against the will. She also filed her applications for exempt property, support, and for a homestead allowance. No responsive pleading was filed.

A hearing was held on May 5, 1986. The announced and agreed purpose of the hearing was to determine the effectiveness of the election to take against the will and the applications for exempt property, support and a homestead allowance. Appearances at the hearing were made by the widow and the personal representative. The issue litigated was whether or not the widow's election and applications were barred by the prenuptial agreement or by the subsequent release agreement. The Probate Division of the Circuit Court made extensive findings of fact and conclusions of law. As stated, it found the agreements ineffective and determined the election was valid and granted the applications.

█ At the outset, this court must consider the widow's contention the appeal must be dismissed because the personal representative has no right of appeal from the judgments in question. A similar issue was considered in *Matter of Estate of Savage*, 650 S.W.2d 346 (Mo.App.1983).

The widow's contention must be determined under the applicable statutes construed in the light of well established principles. "The right of appeal is statutory and does not exist unless so authorized." *Rone's Estate v. Rone*, 218 S.W.2d 138, 144 (Mo.App.1949). The pertinent portion of § 472.160.1 provides: "Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any of the following cases:" Section 512.020 grants the right of appeal to "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause...." The relationship between the two statutes has not been developed and it is not necessary in this instance to do so. Prior to recent amendments resulting from judicial reorganization, it had been held "[t]he right to appeal and whether an

appellant is a party aggrieved within the meaning of Sections 472.160 and 512.020, V.A.M.S., are jurisdictional questions which may be raised at any time and by the court itself,...." *In re Fusz' Estate*, 397 S.W.2d 595, 595 (Mo.1966), 16 A.L.R.3d 1271, 1272–1273 (1967). Under both statutes the right of appeal is conditioned upon the appellant being aggrieved.

Generally, "a party is aggrieved when the judgment operates prejudicially and directly upon his personal or property rights or interests...." *Hertz Corp. v. State Tax Commission*, 528 S.W.2d 952, 954 (Mo. banc 1975). To appeal as such, a personal representative must be adversely affected in his representative capacity as distinguished from his personal capacity. *In re Franz' Estate*, 372 S.W.2d 885 (Mo.1963); *In re Estate of Hill*, 435 S.W.2d 722 (Mo. App.1968). The record must show the personal representative is an aggrieved party in his representative capacity and in the absence of such evidence, his appeal should be dismissed. *Crigler v. Frame*, 632 S.W.2d 94 (Mo.App.1982); *In re Estate of Hill*, supra.

"The great weight of authority is to the effect that an executor or administrator as such is not aggrieved or prejudiced by a decree determining the rights of the beneficiaries, and hence may not appeal." *In re Fusz' Estate*, supra, 397 S.W.2d at 595, 16 A.L.R.3d at 1273. It has been said:

> The underlying rationale for the general rule denying a right to appeal appears to be that the executor or administrator is a mere stakeholder with a duty to deliver the residue of the estate to those persons designated by the court, and not bound to litigate their conflicting claims at the expense of the estate when the conflicting parties may do so at their own expense if it is their desire.

Annot., Executors—Distribution Orders—Appeal, 16 A.L.R.3d 1274, 1277 (1967). For example, it is held a personal representative may not appeal from a determination of apportionment in an order of distribution, *In re Whitsett's Estate*, 237 Mo.App. 1295, 172 S.W.2d 965 (1943), or from a determination a claimant was the adopted daughter of the decedent. *Love v. White*, 348 Mo. 640, 154 S.W.2d 759 (1941). Where all other distributees were parties, and the record did not establish the existence of creditors, it has been held a personal representative may not appeal from an order granting an allowance for the support of a widow. *In re Clark's Estate*, 213 S.W.2d 645 (Mo.App.1948). Additional authorities are collected in *Matter of Estate of Savage*, supra.

However, in the past, in certain circumstances, personal representatives have been permitted to appeal on the basis that all heirs and devisees and other interested persons have not been parties to the proceeding in the Circuit Court. It was so held in permitting an executrix to appeal from an order determining a claimant had been married to the decedent and granting her an allowance for support. *Rone's Estate v. Rone*, supra. In so holding the court said:

> Therefore, if the heirs are parties to the suit, and the record does not disclose that there were any creditors, certainly the administrator could not be interested in the subject matter of the appeal and under the statute would have no right of appeal. These are not the facts disclosed by the record in the case at bar. Here the record shows that the minor heirs to the personal property, in the hands of appellant, were not parties to this suit. The creditors of the estate were not parties to the suit and their interest could only be protected by the appellant, in this case and, therefore, the appellant was interested in protecting the estate against the claim filed herein.

*Id.* at 145. In *Cooper v. Jensen*, 448 S.W.2d 308 (Mo.App.1969), the court held an executor could appeal the allowance of a claim. The court observed:

> He holds the property as a trustee, for the benefit of the creditors, legatees, heirs and distributees. ... When all those for whose benefit he holds the property have already joined, or been made parties to the litigation and thus have a right to control it, the executor may not have such an interest in the

subject matter as to authorize him to appeal.

*Id.* at 313 (citation omitted). Such an exception seems to have resulted from a premise that interested parties were bound even though they had no notice and were not parties. In view of recent decisions and the enactment of § 472.300, the current viability of such a premise must be re-examined. However, it is not necessary to do so in this case.

Even assuming the premise to be sound, the exception is not applicable to this case. The due process requirement of notice has been summarized: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane v. Central Handover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). That doctrine has been further developed in cases such as *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Schwartz v. Dey,* 665 S.W.2d 933 (Mo. banc 1984); *Lohr v. Cobur Corp.,* 654 S.W.2d 883 (Mo. banc 1983). Apparently to clarify and conform probate procedure to that doctrine, § 472.300 was adopted. Among other things, that section requires that in judicial proceedings involving the estates of decedents, notice shall be given to every interested person, or to one who can bind an interested person as set forth in that section. The requirement of notice carries with it the right to oppose the proposed action. Section 472.160 extends the right of appeal to any interested party aggrieved.

In *Matter of Estate of Savage, supra,* the personal representative was permitted to appeal because he was resisting the claim of a third party and the "interested parties" in the estate had received no notice.

In this case, the record does not disclose the existence of any creditor. The trial court expressly found that all interested parties had received notice. In urging dismissal in her brief, the widow asserts that all interested parties were given notice. The personal representative does not controvert that assertion.

Even though they could have done so, none of the interested parties opposed the effectiveness of the election or the granting of the applications in the probate division of the circuit court. Even though they could have done so, none chose to appeal. The record does not demonstrate the personal representative in his official capacity is aggrieved by the judgments.

■ Nevertheless, the court has reviewed the evidence and the findings and conclusions of the Probate Division. These conclusions include a determination that the language of the prenuptial agreement established it was made in contemplation of the first marriage and had no further validity. This conclusion is supported by authorities. "An existing antenuptial agreement made in contemplation of the particular marriage is, after its dissolution, without any purpose or effect and necessarily is terminated." *Seuss v. Schukat,* 358 Ill. 27, 192 N.E. 668, 672–673 (1934). Also see *Skelton v. Skelton,* 490 A.2d 1204 (Me. 1985); *Busekist v. Busekist,* 224 Neb. 510, 398 N.W.2d 722 (1987); *Fern v. Fern,* 140 N.J.Super. 121, 355 A.2d 672 (1976).

■ The Probate Division also found that with the exception of the .22 pistol, valued at $40 and the stereo valued at $100, the widow, irrespective of that agreement, was entitled to the property granted to her by the release agreement. It concluded the pistol and stereo did not constitute fair consideration for that agreement. That conclusion is supported by the evidence. For the reasons stated, the appeal must be dismissed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.